HenRY G. Smith, J.,
delivered the opinion of the Court.
This is a bill in equity dismissed by the Chancellor on demurrer.
*516 The following are the facts material to the decision made in the case:
On the 7th day of August, 1854, Samuel Lancaster and others, executed their writing obligatory to the Mississippi Central & Tennessee Railroad Company, whereby they bound themselves to pay all damages that might arise from the location of the depot of the company in the west end of the town of Jackson.
The railroad company located and established their depot at the place designated. in the bond, and, by virtue of the authority given by the- charter, appropriated and occupied for such depot, lands belonging to John G-. Lancaster.
On the 10th of May, 1859, John Gr. Lancaster recovered against the said railroad company, judgment for the sum of $1,081, on account of the value of his land so appropriated by the company.
This judgment, Lancaster assigned to Martha G. Miller, September 14, 1867.
Several writs of fieri facias were issued on the judgment, and returned nulla bona.
By the fifth section of the charter of the company, enacted by the Legislature, November 30, 1858, the company was authorized, at any time, to unite with the Mississippi Central Railroad Company, and with this latter company, to form and be one body corporate. Such union was afterwards made, and is known by the name of the “Mississippi Central Railroad Company.” Sec. five of the charter, declares, that the union company when made, shall have all the powers, rights, and privileges of the original company, and *517 be subject to tbe same rules, conditions, and liabilities. Tbe complainants in tbe present bill, are Martba G. Miller and tbe Mississippi Central Railroad Company; and tbe defendants are tbe obligors of tbe bond described hereinbefore, and others,
Tbe facts recited above, are set forth in tbe bill of complaint, and tbe purpose and prayer of tbe bill is, to compel tbe obligors of tbe bond to pay the judgment recovered by John Gr. Lancaster.
Tbe defendants demurred to tbe bill, which demurrer was sustained by tbe Chancellor, and appeal from bis decree taken to this Court.
Assuming for tbe present, that tbe Mississippi Central Railroad Company stands in tbe stead of tbe original Mississippi Central & Tennessee Railroad Company, as to rights and liabilities in respect to tbe obligors in tbe bond, and tbe creditor in tbe judgment, it follows very certainly, that tbe obligors in the bond are bound to indemnify the Mississippi Central Railroad Company, against tbe judgment, and that tbe company is bound to pay tbe judgment debt to tbe creditor. Upon rights and liabilities standing in such relation, it further follows, that tbe judgment creditor is entitled to be subrogated to tbe rights of tbe railroad company against tbe obligors in the bond, and may have this bill to enforce such subrogation, and compel tbe obli-gors to pay him tbe judgment debt.
Returning to the assumptions upon which this result is worked out, the inquiry is, whether such assumptions are sound and true in principle and fact. No good reason is seen, why equity may not consider and deal *518 with the enactment of the charter, (the sec. 5,) as having the effect to transfer to the consolidated company, the right to enforce against the obligors in the bond, payment of the damages. A transfer of properties between parties may be well worked by Legislative enactment, accepted, sanctioned and given effect to,- by the parties between whom the transfer is made. The very fact of the consolidation made by the companies, pursuant to, and by virtue of the Act of the Legislature which declares the effect upon the rights and liabilities of the parties of such consolidation, of itself, implies as between the companies, the assent to transfer and acceptance of the rights and liabilities as declared by the Act. It may, then, be taken as true, that the consolidation of the companies, by virtue of the fifth section of the Act, worked a transfer of the right of action on the bond, to the new company. And it may also be taken as true, that the consolidation, by virtue of the sec. 5 of the Act, had the effect to subject the union company to liability to pay the judgment debt.
The remedy by which the rights and liabilities so transferred may be enforced, whether, and to what extent, by action at common law, or by proceedings in equity, need not be considered with a view to the decisions of the present case.
The books furnish the authorities sustaining the foregoing positions. Thus, it is said in 2 Redf. Rail., 659, sec. 3, ch. 38, where the amalgamation is strictly legal, and no impediment arises in regard to the power of the remedy, it would seem a contract made before amalgamation should be capable of being enforced after.
*519 So, in 6 Eng. Railway Cases, 177, (3 Exchq. R., 320,) where a clerk to a railway company had executed a bond with surety, for the performance of his duty to one company, which was afterward amalgamated with another company by Act of Parliament, saving to the consolidated company all remedies on contracts to either, it was held, an action will lie on such bond for a breach committed before the amalgamation.
So, too, such bond made to the old company, is good security to the new company, for the faithful conduct of such clerk in the employ of the new company: 24 Eng. L. & E., 495.
And, again, in the Philadelphia, Wilmington & Baltimore Railroad Company vs. Howard, 13 How. U. S. Rep., 307, the doctrine finds support, that, upon the consolidation of such corporate companies by Legislative Act, and the sanction of the companies, the new company may become invested with the rights and liabilities of the old companies. In that case, three companies had been consolidated into one confederate body by Legislative Act. In an action, before the consolidation, between Howard, etc., and one of the old companies, the counsel of that company had, upon the trial, treated the writing in question as bearing the corporate seal of that company. This writing .was the foundation of the action between Howard, plaintiff, and the new company, which was designated the Philadelphia, Wilmington & Baltimore Company. In this latter action, it was important to prove that the writing bore the-seal of the old company. It was proposed to make this-proof, by showing that in the former action, it had been-. *520 so treated by tbe counsel of tbe old company. Tbe evidence was held to be admissible. The ground on which it was so held, was, that tbe old company was so far the same corporation as tbe new consolidated company, that tbe admission of tbe former was to be deemed tbe admission of tbe latter, in respect of tbe paper in question, and as between tbe parties in tbe suit.
The same doctrine was held in tbe case of tbe Eaton & Hamilton Railway Company vs. Hunt, 20 Indiana Rep., 427. Under tbe authority of Acts of tbe Legislatures of Ohio, and Indiana, tbe Richmond & Miami Railway Company was consolidated, and, to an extent, merged in the Eaton & Hamilton Railroad Company. By the terms of tbe consolidation, it was agreed that tbe Eaton & Hamilton Company should assume tbe properties, franchises and liabilities of tbe Richmond & Miami Company. Tbe latter company, before its merger in tbe former company, bad issued bonds, and for their security executed mortgages on tbe road. Tbe holders of tbe bonds sued to enforce payment by foreclosure of their mortgage, and tbe action was brought against tbe Eaton & Hamilton Company — tbe new company. It was held, the suit was properly brought against tbe latter corporation.
Tbe foregoing authorities suffice, if any were needed, to establish tbe position, that where such consolidation and merger of corporations are made, and such transfer of rights and properties, and assumption of liabilities between tbe old and new companies are effected, tbe new company stands in tbe stead of tbe old companies, *521 and may enforce the rights of the old companies, and he subjected to their liabilities. By what remedy in law or equity this is to he done is not now intended to he decided. It may, however, he properly stated, no objection is seen to considering the new company so far the old company, as to authorize, generally, the like remedies by and against the new company in respect of the rights and liabilities of the old companies, as would have been proper as to the old companies, had the consolidation never taken place. This doctrine may be startling to the common law lawyer, whose modes of thought in regard to pleading and practice, a,re one or two centuries old. But it seems proper to mould and shape the modes of proceeding to enforce rights, to the novel and changing modes of business and relations of parties, that are constantly arising out of the growth and progress of commerce, art, science and civilization generally.
Taking it for true, that the Mississippi Central Company is invested with the rights and liabilities, so far as the present parties are concerned, of the merged Mississippi Central & Tennessee Company, the inquiry next in order, is, whether the new company may have their bill in equity to compel the obligors of the bond to pay the damages recovered by the judgment in favor of John Gr. Lancaster, or whether the company will be driven to an action at law on the bond against the obligors, to ascertain the damages and establish their liability to pay them.
Of this there can be no doubt. The bond is in the nature of a bond to indemnify the railway company *522 against any damages recoverable for lands taken for the purpose of a depot, by reason of its location at the Ca-ruthers Depot. Upon a bond or covenant to indemnify or save harmless against damages or debt,' Chancery will maintain the bill of the covenantee, to compel the cove-nantor to pay the "damages or debt, and that, before the covenantee has been compelled to pay, or been molested by suit. It is upon the like kind of equity, which will sustain a bill of a surety to compel the principal debtor-to pay the debt, if the debt be due and the creditor delay to sue: Ranelaugh vs. Hayes, 1 Vernon Rep., 189, and case 190. And it matters nothing, that the covenant sounds in damages. In such case, the Court may direct a trial at law, or in our practice, impanel a jury to ascertain the amount of the damages.
It being shown that the Mississippi Central Company is responsible for the judgment against the Mississippi Central & Tennessee Company, and that the Mississippi Central Company may enforce the bond of indemnity against the obligors, it remains to ascertain whether the judgment creditor, or which is the same, his assignee, Miller, has an equity to reach the obli-gors by bill, and subject to the payment of his debt, the demand upon their bond against the obligors. Of this, there can be no doubt. The equity of the judgment creditor, may be worked out upon the familiar principles of subrogation. -Ordinarily and most frequently, the doctrines of subrogation find their application to the relation of principal and surety. The surety has an equity to reach and apply to his indent - *523 nity, the securities which the principal debtor has provided for the payment of the debt. Securities, which the principal debtor has provided for the creditor, the surety has an equity to require to be applied to the payment of the debt, or to the remuneration of the surety, in case he has paid the debt.
And so, too, the creditor has an equity to follow and subject to his demand, any securities which the principal debtor has provided for the indemnity of his surety. And this, whether the creditor was owner in the first instance, of the security provided for the surety by the principal debtor, or whether the creditor did or not act upon or give credit to, in the first instance, to the securities so provided.
See authorities cited in notes to Dearing vs. Earl of Winchelsea, 1 Eq., Lead. Cas., and in notes to Aldrich vs. Cooper, 2 Lead. Eq. Cas.
In respect of the parties here, the ultimate, and in that sense, the primary liability to pay the damages to Lancaster, for the land taken by the railroad company rests upon the obligors in the indemnity bond. Upon this relation between the company and the obligors in the bond, the latter stand to the former as principals to surety. At any rate, the relation has sufficient similarity to that of principal and surety, to authorize the application to these parties, of the doctrines of subro-gation applicable to principal and surety, and creditor and debtor.
The conclusion, therefore, is, that the complainant Miller, being assignee of the judgment, has the equity *524 here shown ,in this hill, to reach and subject to the satisfaction of the judgment, the demand of the railway company against the obligors in the bond. And for this reason, the demurrer must be overruled, and the defendants required to plead or answer.
It may be added, that the right of the railroad company to go into equity, instead of resorting to an action at law, to enforce against the obligors the judgment, is not deemed essential to the equity of the judgment creditor to reach, by bill, the obligors in the bond.
Probably the bill may be maintained on other ground than that hereinbefore stated. The creditor has a' nulla bona to execution' upon the judgment, and may have the aid of Chancery to reach the bond as equitable assets of the judgment debtor, upon the ground of having exhausted all legal remedies to procure satisfaction of the judgment.
Eor the causes assigned, reverse the decree of the Chancellor dismissing this bill, and send the cause back to the Chancery Court for plea or answer.