MEMPHIS WATER COMPANY *et al. v.* MAGENS & CO.

1. CORPORATIONS. *Sale of franchises under a mortgage.* The purchasers of the property and franchises of a corporation at a foreclosure sale, under a mortgage authorized by the charter, who, with a view of perfecting a reorganization of the corporation under the charter, meet together, elect officers and directors in conformity with the charter, and proceed to exercise the franchises of the corporation, under the name of the original company, for the purposes specified in the charter, do not thereby become the corporation, or make themselves or their property liable for the debts of the old corporation.

2. SAME. *Old and new. Liabilities.* A mere change of the name of an existing corporation, either simply or by way of consolidation with another company, would not affect the liabilities of the corporation, but the creation of a new corporation by the purchasers of the property and franchises of the old corporation, or the voluntary association of such purchasers under the name of the old corporation, would not render the new entity liable for the debts of the old.

3. SAME. *Same. Same.* A provision of a charter of incorporation that the purchasers of the property and franchises of the corporation, under a foreclosure of a mortgage thereof, shall be vested with all the powers and privileges, and be subject to all the duties and liabilities of said company, merely subjects the purchasers to the burdens and obligations of the charter, and not to the debts of the old corporation.

4. BOND, DELIVERY. *Not a judgment.* A delivery bond, although it operates as a judgment by statute so far as to authorize the issuance of an execution thereon, is not a judgment.

5. SAME. *Estoppel.* A delivery bond which does not recite that the chattels levied upon were the property of the judgment debtor, or were levied upon as his property, will not estop one or more of the obligors from claiming the ownership of the chattels, especially if resorted to merely as a means of taking the property out of the hands of the sheriff with a view to settle the rights of the parties by an agreed case.

### FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

GANTT & PATTERSON and WRIGHT & FOLKES for complainants.

TAYLOR & CARROLL for defendants.

COOPER, J., delivered the opinion of the court.

Injunction bill tried upon an agreed statement of facts. The chancellor, on final hearing, made the injunction perpetual. The Referees recommend a reversal of the decree. The exceptions open the case.

By an act of the General Assembly of the State, passed on February 28, 1870, the Memphis Water Company was incorporated to construct waterworks in and adjacent to the city of Memphis, and to supply the city and its inhabitants with water. The act of incorporation conferred upon the company various privileges, and subjected it to certain obligations and burdens. The corporation was authorized to bor-

row money for the purpose of carrying out its objects, and to issue bonds therefor. The ninth section of the act is in these words: "To secure payment of bonds issued, or moneys borrowed, the president and directors may mortgage all the property of the company existing at the date of the mortgage, as well as all the property by the company to be afterwards acquired, and the franchises granted by this act; and in case of foreclosure and sale under such mortgage, the purchaser or purchasers shall succeed to, and be vested with, all the powers and privileges, and be subject to all the duties and liabilities of said company." The corporation did borrow money, issue bonds therefor, and convey its property and franchises in mortgage, with power of sale, to secure the debt thus created. The mortgage was afterwards foreclosed by a sale of the property and franchises under a decree of the Circuit Court of the United States at Memphis, which sale was confirmed on March 5, 1880. Subsequently, when the purchase money had been paid, on June 17, 1880, the title to the property, "franchises, rights and privileges" of the company were, by a decree of that court, vested in T. J. Latham and four other persons named, as the purchasers, "free from all liability for the debts, contracts and responsibilities of the said Memphis Water Company." On March 9, 1880, the said purchasers met, and agreed to appropriate to themselves and such other persons as they might thereafter associate with them, "the rights, privileges and franchises granted in the charter of the Water company, together with all the property, real

and personal, belonging to said company, and sold at said sale," and to assume the duties thereby devolved upon them. At the same time, "with a view of perfecting a reorganization of said company under said charter," they proceeded to elect directors and officers in conformity with the charter. The company, thus organized, thereafter exercised the franchises of the original corporation for the purposes specified in the charter, and under the name of the Memphis Water Company.

Previous to the foreclosure, but after the execution of the mortgage as aforesaid, the defendants Magens & Co., had recovered a judgment for several thousand dollars against the original Memphis Water Company, upon which execution had been issued and returned *nulla bona.* On September 2, 1881, an *alias* execution was issued on this judgment, and levied by the sheriff on certain personal property of the new Memphis Water Company, which had been bought since the purchase at the foreclosure sale, and the reorganization as aforesaid. On the same day, a delivery bond was executed by the Memphis Water Company, as principal, and the purchasers at the foreclosure sale as sureties, reciting the levy on the property, but without stating that the articles levied upon were the property of the Memphis Water Company, or that they were levied upon as the property of the company, and conditioned for the forthcoming of the property on September 13, 1881. The property was not then delivered, and the bond was declared by the sheriff to be forfeited. On the next day, this case was submitted to the chancery court upon an agreed statement of facts.

This statement, after setting out in detail, with exhibits, the foregoing facts, showed further that the purchasers at the foreclosure sale had increased the capital stock of said company, and divided it into shares, many of which were held by new parties. "It is agreed," says the statement, "that this case be filed in the chancery court of Shelby county, and that it stand as an injunction bill; that the sheriff return the execution and forfeited delivery bond aforesaid to the circuit court as enjoined in his hands." There are also these further stipulations: "This case is to stand as though the Memphis Water Company and the sureties (naming them) on the delivery bond executed to the sheriff for the property levied on, had filed their bill on the facts herein agreed, and obtained an injunction to restrain said Magens & Co. and said sheriff from further proceeding on said execution and delivery bond; and a bond made by said Water Company and sureties is filed as part of this agreed case, and to be taken as an injunction bond duly given under the *fiat* of the chancellor in such a proceeding, upon which, as upon an injunction bond, judgment may be entered in this agreed case on the contingency of an adjudication in favor of said Magens & Co. in this case, as is provided in the condition of said bond." That bond recites that "an agreed case has been made up between the said Magens & Co. and the said obligors herein, to be tried in the chancery court of Shelby county, to test the question of the liability of the Memphis Water Company for the debt of said Magens & Co. aforesaid, under the

present organization of the Memphis Water Company.
* * Now, therefore, if, as the result of such agreed
case, it shall be adjudged that the Memphis Water
Company, as now organized, is liable for the debt of
the said Magens & Co., or that its property, so levied
on as aforesaid, is subject to the said execution, then,
as part of the judgment in said case, judgment may
be rendered upon this bond against the obligors" for
the judgment, interest and costs. The agreed case
contains this further clause: "The complainant com-
pany denies liability, and says the levy upon its prop
erty is wrongful; and the claim for satisfaction by
the defendant, and the denial of the right thereto
by complainant, make the issue for trial on this agreed
case."

The question then is whether a judgment-creditor
of the original Memphis Water Company can subject
to the satisfaction of his debt the property of the
new company "as now organized." What is the organ-
ization of the new company? The original charter
of the old company authorized it to mortgage its prop-
erty and franchises, and consequently the mortgage
itself and the sale thereunder conveyed the property
and franchises. This court has held, in accord with
the uniform current of authority, that the franchises
thus conveyed would only be such as appertain to
the use of the property for the purposes of the grant,
and that they do not include the power to form a
corporation, either by a reorganization of the old entity
or *de novo: Ragan* v. *Aiken*, 9 Lea, 609; *Railroad*
v. *Kyle*, 9 Lea, 691. The power to create a corpo-

ration is a branch of sovereignty, and cannot be assigned without legislative sanction. The organization or re-organization of the purchasers of the property and franchises in this case did not, therefore, revive the old corporation or create a new corporation. The parties themselves may have thought, and it seems did think, otherwise, and proceeded in their action upon the idea that they had acquired, by their purchase, the right to be the corporation created by the original charter. In this conclusion they were simply mistaken: *Memphis, etc., Railroad Company* v. *Commissioners*, 112 U. S., 610. They became authorized by their purchase to exercise the franchises bought, as a partnership, association, or joint stock company, and they might do this under the name of the old company, or any other name they saw proper to assume, and under the forms of the old organization, or any other form they might deem advisable to adopt. But they did not thereby, and could not, become a corporation, and would not be liable as such to any person except one subsequently dealing with them in their new capacity.

Of course, a mere change of name in an existing corporation, either simply or by way of consolidation with other companies, would not affect the liabilities of a corporation: *Miller* v. *Railroad Company*, 5 Cold., 514. But the creation of a new corporation under legislative authority, or voluntarily, if that were possible, would not render it liable for the pre-existing debts of another corporation of the same name. Nor, *a fortiori*, would a voluntary organization of a part-

nership or association of persons under the name of a pre-existing corporation, render the new entity liable for the debts of the old.

These principles are frankly conceded by the learned counsel of the defendants, and they admit that the complainants have not, by any thing they have done in the organization of their association, made themselves liable for the debts of the original Memphis Water Company. Nor do they insist, as suggested by the other side, that the purchasers under the foreclosure sale became liable, under the ninth section of the original charter, for the debts of the old corporation. That section, as we have seen, provides that the purchasers under the foreclosure sale shall be "vested with all the powers and privileges, and be subject to all the duties and liabilities of said company." The plain meaning of this provision is that while, under the sale of the property and franchises of the corporation, the purchasers are clothed with the powers and privileges of the charter for the purposes specified therein, they must equally be subject to the duties and liabilities, or burdens and obligations, imposed by the charter. And it would be simply absurd to hold that under a provision of a charter intended to secure specific debts, those debts would not only not be secured, but outside debts would be. That would be a practical illustration of the query, does prohibition prohibit? in the form of does security secure? The real contention of the defendants is that the complainants might, by proper action in time, have prevented their property from being subjected to

the debts of the old corporation, but that as to the particular debt in controversy, they have become liable therefor by the course pursued, and, under the facts of the agreed case, must be made to pay the same.

It is first contended that the delivery bond by its forfeiture became a judgment, binding on all the parties. But a judgment is a decision or sentence of the law, pronounced by a court or other competent tribunal, upon the matter contained in the record, or the conclusion of law upon the facts found by the court or jury, or admitted by the parties: Freem. on Judg., sec. 2. A delivery bond, although it operates as a judgment by statute so as to sustain an execution, is not a judgment, and so this court has held in *Haynes* v. *Jordan*, 2 Leg. Rep., 282.

It is next insisted that the execution of the delivery bond estops the complainants to deny that the articles levied on were the property of the old corporation. But the bond, as we have seen, does not recite that the articles were the property, or were levied on as the property, of the old company. There is consequently no technical estoppel by positive averment, and our authorities are uniform that the mere joining in the bond will not prevent a person from claiming the property: *Decherd* v. *Blanton*, 3 Sneed, 373; *Helm* v. *Wright*, 2 Hum., 75. The bond seems to have been resorted to merely as a means of taking the property out of the hands of the sheriff in view of the contemplated adjustment of the rights of the parties in the agreed case.

And this agreed case, in the plainest terms, ex-

pressly provides that it is to be treated as upon a bill
filed by the complainants to enjoin a sale of the prop-
erty, and that the liability of the complainants is to de-
pend upon its being adjudged, on the agreed facts, that
the Memphis Water Company, as now organized, is
liable for the debt of the defendants on the old com-
pany, and its property subject to the execution levied
thereon.    We are clearly of opinion that the new
association, " as now organized," is not liable for the
debts of the corporation, nor its property subject to
execution on such debts.

The exceptions to the report of the Referees will
be sustained, and the chancellor's decree affirmed with
costs.    A similar decree will be entered in the case
of the Memphis Water Company and others against
J. O. Pierce, defendant, on the same state of facts.