THE FIRST NATIONAL BANK OF CHATTANOOGA, TENN., *v.* HARRY E. CHAPMAN COMPANY *et al.**

*(Knoxville.* September Term, 1929.)

Opinion filed December 9, 1929.

---

*On the general rule as to changes in corporate organization **as** affecting status as trustee, executor, administrator, or guardian, **see** annotation in 61 A. L. R., 994.

Williams & Frierson, for complainant, appellee.

J. L. Foust, for defendant, appellants.

Mr. Chief Justice Green delivered the opinion of the Court.

This proceedings was brought under the Declaratory Judgments Statute and the question presented is whether a national bank with which a state bank has been consolidated succeeds, by virtue of the consolidation, to the rights and title of the state bank as trustee under a trust deed conveying real estate to secure the payment of certain notes, with power of sale in case of default.

The Chattanooga Savings Bank and Trust Company was a Tennessee corporation engaged in the banking business with power to act as trustee and in other fiduciary capacities. On January 29, 1929, this institution consolidated with the First National Bank under the provisions of an Act of Congress passed February 25, 1927, adding a new section, 3, as an amendment to the Act of Congress November 7, 1918. All assets of the state bank were turned over to the national bank and the former bank ceased the transaction of business.

Previous to this consolidation, W. R. Smith and wife conveyed to the Chattanooga Savings Bank and Trust Company, as trustee, described real estate in Chattanooga to secure the payment of a series of notes in favor of Harry E. Chapman Company, aggregating $3529.13. The trustee was authorized upon default, after due advertisement, to offer the land for sale for the

satisfaction of the indebtedness secured. Smith and wife are now in default in the payment of their notes and the First National Bank is proposing to advertise and sell the land according to the terms of the trust deed, claiming to have succeeded to the rights, title and powers of the trustee named in the instrument aforesaid.

Section 3 above mentioned provides that any bank, including a trust company, incorporated under the laws of any State, may be consolidated with a national banking association, located in the same county, under the charter of any such national banking association or under such terms and conditions as may be lawfully agreed upon in the manner specified; and that all the rights, franchises and interests of such state bank "so consolidated with a national banking association in and to every species of property, real, personal, and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national banking association into which it is consolidated without any deed or other transfer, and the said consolidated national banking association shall hold and enjoy the same and all rights of property, franchises and interest, including the right of succession as trustee, executor, or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by such State . . . bank so consolidated with such national banking association. . . . No such consolidation shall be in contravention of the law of the State under which such bank is incorporated."

 Referring to the last sentence of the section just quoted, it may be observed that the consolidation, as it is termed by Congress, of a state bank with a national bank is not in contravention of the laws of Tennessee.

Section 23 of chapter 20 of the Acts of 1913, authorizes a consolidation or merger of banks incorporated under the laws of this State with other banks, upon the observance of prescribed procedure and permission of the Superintendent of Banks. This section of the Act of 1913 has been construed to authorize the consolidation or merger of banks chartered under the laws of this State with national banking associations by the Superintendent of Banks and we have no disposition to question this construction.

In *Casey* v. *Galli,* 94 U. S., 673, 24 L. Ed., 168, the Supreme Court sustained the power of Congress to authorize the transmutation of a state bank into a national bank although there was no authority in the charter of the former bank or in the laws of the State of its incorporation so to change its organization. Doubtless, therefore, it is within the power of Congress to authorize the consolidation of a state bank with a national bank in the absence of any state legislation to the contrary. *Petition of Worcester County National Bank* (Mass.), 162 N. E., 217. As just seen, the laws of Tennessee appear to sanction, rather than forbid such consolidation, or remain silent.

The consolidation of the two corporations, generally speaking, being valid, the question remains as to the validity and effect of that provision of section 3 undertaking to make the consolidation, *ipso facto,* transfer to the national bank ''the right of succession as trustee, executor, or in any other fiduciary capacity.''

The maker of this trust deed entered into a binding contract whereby the Chattanooga Savings Bank and Trust Company was made trustee under the trust deed, with a right of foreclosure and sale in case of default,

and the proceeds of the sale were to be applied "first to paying the costs and expenses of this trust and its execution," and the remainder of the proceeds to the indebtedness and any balance turned over to the makers of the instrument. A property right was thus lawfully conferred upon the Chattanooga Savings Bank and Trust Company. It was a valuable right. Since institutions like this one have been empowered to act as trustees and in other fiduciary capacities, a large part of their business is of this nature and much of their income is derived from such sources.

Upon a review of the authorities, this court has said that when a valid consolidation or merger of corporations is made with "transfer of rights and properties, and assumption of liabilities between the old and new companies are effected, the new company stands in the stead of the old companies, and may enforce the rights of the old companies and be subjected to their liabilities." *Miller* v. *Lancaster,* 45 Tenn. (5 Cold.), 514. Approved in *Memphis Water Co.* v. *Magens & Co.,* 83 Tenn. (15 Lea), 37.

The law is elsewhere declared to the same effect.

"Generally by express provision of the statute or agreement of consolidation, and by implication in the absence of a provision to the contrary, the consolidated corporation succeeds to and may enforce the rights of the consolidating corporations under contracts made by them before the consolidation." Clark and Marshall on Corporations, section 355b.

See also 14a C. J., 1069, and cases referred to in *Petition of Worcester County National Bank, supra.*

We are not able to take the right to administer a trust of this nature out of the rule governing the contract or

property rights generally of a corporation consolidating with another corporation.

The reason ordinarily forbidding the transfer or delegation of the office or duties of trustee to another is that "the performance of the trust is a matter of personal confidence, which it is a breach of trust in a trustee to make over to a stranger; and the original trustee will continue responsible for all the acts of the person so substituted." *Colyar* v. *Taylor*, 41 Tenn. (1 Cold.), 373.

Such consideration cannot reasonably influence the appointment of a corporate trustee. Personal confidence cannot be the basis of such a selection. The stockholders, the officers, the entire management of a corporation may be expected to change from time to time. These things are sanctioned by law and constitute, on the part of the corporation, no breach of its duty as trustee. So the law sanctions the consolidation of one corporation with another corporation organized for like purposes, and those appointing a corporate trustee do so with knowledge that such a union may take place carrying all the rights and properties of both entities into combined organization. Such consolidation, authorized by law, is no more a breach of trust than a change in corporate officers and directors.

A corporate trustee is supposed to be more desirable than a personal trustee by reason of continuity of existence and ordinarily larger financial responsibility. One designating a corporation as trustee, however, must be held to do so with knowledge that the trust is to be administered by those persons to whom the stockholders of that corporation commit the control of its affairs. In addition to changes in the personnel of its management, a corporation may increase or decrease its capital stock,

or otherwise amend its charter. One dealing with a corporation deals with a creature of the law that may proceed as the law permits.

The views expressed find support in decisions of the New York Court of Appeals and of the Illinois Supreme Court.

In the *Matter of Bergdorf,* 206 N. Y., 309, the testator made a will appointing the Morton Trust Company his executor. Prior to his death the Morton Trust Company was merged into the Guaranty Trust Company under authority of a New York statute. Upon the testator's death, the Guaranty Trust Company applied for letters testamentary. Referring to the statute and the effect of the merger, the court said:

"In reading the sections we do not regard the intention of the testator, but that of the Legislature. Their language is broadly and conspicuously comprehensive. The merger transferred to the Guaranty Company 'all and singular the rights, franchises and interests of' the Morton Company 'in and to every species of property, real, personal and mixed, and things in action thereunto belonging,' and empowered the Guaranty Company to 'hold and enjoy the same and all rights of property, franchises and interests in the same manner and to the same extent' as the Morton Company would if it 'should have continued to retain the title and transact the business of' the Morton Company. This language means not only that every right, privilege, interest or asset of conceivable value or benefit then held by the Morton Company (except the right to be a corporation) should pass into and be absorbed by the Guaranty Company, but also that every right, privilege, interest or asset of conceivable value or benefit then ex-

isting which would inure to the Morton Company under an unmerged existence should inure to the Guaranty Company. Nothing appertaining to the Morton Company was to be lost, forfeited or destroyed.

"The designation of the Morton Company as an executor created a privilege or an interest in the estate of the testator appertaining to that company. The privilege or interest was not complete or vested; it was incomplete, potential and ambulatory. From it, undisturbed until the testator's death, issued the absolute interest of an executorship and the power to participate in the control and administration of the testator's estate and receive the legal fees and commissions. That interest had no source or origin other than the will and the designation. The testator's death did but complete and vest that which theretofore existed. It existed, although in an incomplete, imperfect and dependent condition, from the making of the will and at the time the merger of the Morton Company was consummated. Ignorance on the part of the Morton Company of its existence did not affect it. Through it that company would have been an executor and entitled to the letters testamentary if it had 'continued to retain the title and transact the business of such corporation.' The merger transferred it to the Guaranty Company and in effect substituted that company for the Morton Company. The Guaranty Company was entitled to hold and enjoy it even as would the Morton Company under an unmerged existence. By virtue of the statute, effective as a part of the will, the Guaranty Company was designated as an executor and as such is entitled to receive the letters testamentary."

In *Chicago Title & Trust Co.* v. *Zinser*, 264 Ill., 31, the testator by her will nominated the Real Estate Title and Trust Company as executor. Prior to her death that corporation consolidated with the Chicago Title & Trust Company under authority of an Illinois statute. After the testator's death, the Chicago Title & Trust Company applied for and obtained letters testamentary and undertook to make a deed to testator's real estate as the executor nominated in the will was empowered to do. The right of the consolidated corporation to qualify as executor and to make such a deed was questioned but was upheld. The court said:

"By the consolidation of the Real Estate Title and Trust Company and the Chicago Title and Trust Company the original corporations ceased to exist, and the appellee, as the consolidated corporation, acquired and succeeded to all the faculties, property, rights and franchises of its component parts and became subject to all the duties, obligations and conditions imposed upon them. (*Robertson* v. *City of Rockford,* 21 Ill., 451; *Chicago, Rock Island & Pacific Railroad Co.* v. *Moffitt,* 75 id., 524.) The material question here is whether the general rule that a trustee cannot delegate his authority to another is an obstacle to the exercise of a power by the appellee to act as executor or trustee where one of the constituent corporations was named as such. That general rule rests upon the ground that the selection of a trustee implies personal confidence in his discretion and judgment. If a power is given to an executor or trustee which is not ministerial or given for the purpose of executing a declared trust which the court can enforce but which involves the exercise of discretion and judgment, the power cannot be delegated or transferred to another, either

by the trustee or a court. The rule, however, cannot be applied to the case of a corporation, because the element of trust in the judgment and discretion of an individual is entirely wanting. A corporation is without personality, and if it is selected as trustee or executor there can be no reliance upon individual discretion or even upon the continuance of the same administration. Etta Nelson, in naming the Real Estate Title and Trust Company as executor and trustee, knew that its directors, officers and stockholders might change from time to time, and that the statute authorized a change of name or place of business, enlargement or change of the object for which the corporation was formed, an increase or decrease of capital stock or change in the number of shares or par value, increase or decrease of the number of directors, and the consolidation of the corporation with any other corporation then existing or that might thereafter be organized. She therefore contemplated that these changes might occur and that the Real Estate Title & Trust Company might be consolidated with some other corporation such as the Chicago Title & Trust Company, and that it would thereby cease to exist and become a component part of a new corporation. A consolidation took place and a new corporation was created from the original corporations, with an enlarged capital stock and unimpaired franchises. The appellee was entitled to execute the trust, and the chancellor did not err in overruling the demurrer."

In *Petition of Worcester County National Bank, supra*, the Supreme Judicial Court of Massachusetts held that so much of section 3 aforesaid as undertook to transfer to a national bank the right of a state bank to the office of executor was unconstitutional. The Massachusetts court

construed section 3 as undertaking to transfer the office held by the state bank to the national bank by force of the consolidation without more. The court said that no one, under the laws of Massachusetts, was authorized to act as an executor without approval of a probate court.

Upon appeal, the Supreme Court of the United States, in an opinion delivered May 13, 1929, No. 12 Advance Opinions, p. 427, differed from the Massachusetts court in the construction given to section 3. The Supreme Court, in view of the provisions of the Massachusetts laws and of the expressed desire of Congress to avoid in section 3 anything in contravention of the law of the state in which the state bank was located, said, in substance, that section 3 upon consolidation only undertook to put the national bank in a position to apply for letters of administration; that the consolidation alone was not sufficient to effect a substitution of the national bank for the state bank as executor. The Supreme Court therefore concluded that section 3 was not unconstitutional.

In Tennessee, since no person nominated as executor may enter upon the administration of the deceased's estate without letters testamentary (Thompson's-Shannon's Code, section 3933), and since under sections 4259, *et seq.*, Thompson's-Shannon's Code, detailed provisions are made for the qualification and supervision of a guardian, it is doubtless true that such a consolidation of a state bank with a national bank will not of itself and alone justify the national bank in undertaking to execute such trusts as these. The primary right to administer such trusts doubtless follows the consolidation but the national bank must properly qualify

as executor or guardian before undertaking to proceed in such capacities.

Where, however, the authority to administer a trust is altogether derived from the instrument appointing a state bank trustee, we are of opinion that a consolidation of a state bank with a national bank under section 3, without more, substitutes the national bank for the state bank as such trustee with the same rights, title, duties and powers. This, for the reason as heretofore set out, that the maker of the instrument appoints with imputed knowledge of the law, under which a corporation is a metamorphic creature subject to transformation.

There has been some discussion of the present status of the Chattanooga Savings Bank and Trust Company— whether it is in existence, and if so, for what purposes. Thompson's-Shannon's Code, sections 2071, 2074. We need not go into this. The consolidation being valid, under the provisions of section 3, the right to execute this trust has clearly passed from the state bank.

The decree of the chancellor is affirmed.