NASH-ECHOFF MOTOR CO. AND C. I. T. CORPORATION, PLAIN-
TIFF IN ERROR, *v.* KETTLEWELL BROTHERS, A CORPORA-
TION, DEFENDANT IN ERROR.*

(*Nashville.* December Term, 1929.)

Opinion filed  December 21, 1929.

*Corpus Juris-Cyc References: Justices of the Peace, 35CJ, section 500, p. 798, n. 63.

WILLIAM W. GOODMAN and KNAPP & BEARMAN, for plaintiff in error.

T. L. CAMPBELL and G. F. STEGAR, for defendant in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

On November 28, 1928, J. D. Ellis, a Justice of the Peace for Shelby County, entered a judgment in favor of the appellee and against the appellants for $389. The appellants were granted an appeal to the Circuit Court of Shelby County, and on November 30, 1928, filed their appeal bond.

On December 13, 1928, counsel for the appellee filed the justice of the peace papers in the circuit court, and at the same time filed a written motion for an affirmance of the justice of the peace judgment, because the papers had not been filed within the five days required by statute.

Counsel for the appellants filed an answer, by which they undertook to explain the delay, stated that they had been anxious and ready all the time to prosecute their appeal, and moved that the case be set for hearing upon its merits.

These motions were heard by the trial court on January 5, 1929, and taken under advisement until February 6, 1929, when he overruled the motion of appellants and sustained the motion of appellee, stating that he regretted the necessity of disposing of the case without a hearing on the matter.

The decision of this court in *Railroad* v. *Haynes,* 114 Tenn., 426, is an authority for the conclusion reached by the trial court.

The five sessions of the Circuit Court of Shelby County are held on the third Mondays in January, March, May, September, and November; hence the trial before the justice of the peace, and the proceedings referred to above, occurred during the November, 1928, term of the circuit court.

The statutes involved, as incorporated into the Code of 1858, are as follows:

"3142. When the appeal has been properly prayed and obtained, it is the duty of the Justice, within the first two days of the term to which the appeal is prayed, to transmit to the Clerk of the Circuit Court all the papers on file and proceedings had in the cause.

"3143. If the papers are not filed within the time prescribed, the appellee may, on production thereof, have an affirmance of the Justice's judgment, with costs.

"3144. If the Justice fail to return the papers within the time prescribed, but return them during the term to which the same are returnable, and the appellant fail to appear and prosecute his appeal, if he is the original defendant, the plaintiff shall have judgment final, by default, for the amount of the judgment of the Justice, against the appellant and his sureties for the debt and costs. If the plaintiff is the appellant, and fails to appear within the term, his suit shall be dismissed, and judgment given against him and his sureties for costs."

The first two sections are taken from the Act of 1809, and the third from the Act of 1811. There is no substantial difference between the original Acts and the sections of the Code just quoted.

By section 1 of chapter 251, Acts of 1889, it is provided:

"That whenever an appeal shall be prayed and perfected from the decision of any Justice of the Peace in this State, it shall be the duty of said Justice to file the papers in the case in the office of the Clerk of the Circuit Court at least five days before the meeting of the Circuit Court, and any Justice of the Peace failing to comply with this Act shall have no fees or cost allowed in such cases, at the discretion of the court."

Section 1 of chapter 8, Acts of 1905, is as follows:

"That every civil case tried before a Justice of the Peace, during the sitting of the Circuit Court of the county from which an appeal is perfected, the Justice of the Peace shall within five days after said appeal has been perfected, deliver the papers in the cause to the Clerk of the Circuit Court; and if the Circuit Court shall continue in session ten days after the papers shall have been filed with the clerk, the cause shall be placed on the trial docket and stand for trial at that term of the court. In such cases either party may demand trial by jury within seven days after the right of appeal has accrued."

It becomes material to consider the construction placed upon the Acts of 1809 and 1811 by this court prior to the adoption of the Code of 1858.

In *Humphrey* v. *Humphrey*, 31 Tenn., 154, decided in 1851, this court, speaking through Justice GREEN, said:

". . . In rendering judgment in this cause, the court was guided by the provisions of the Act of 1809, chapter 63, section 2. That act provides, that when a justice shall render a judgment, and an appeal shall be taken, 'it shall be the duty of the justice, within the two first days of the term, to which the appeal is

made returnable, to transmit to the clerk of the circuit court, all the proceedings had in the cause; and if the papers, in the cause, shall not be returned to the clerk aforesaid, within the time aforesaid, it may be lawful for the appellee, upon the production of the papers in the cause, to move for judgment against the appellant and his securities for the amount of the debt and costs.'

"This statute, if it stood alone, would by its plain provisions, have authorized the judgment pronounced in this cause.

"But, we think, its provisions are modified by the Act of 1811, chapter 119. The first section of that act (Car. & Nich. 428) provides, that where an appeal shall be taken from the judgment of a justice of the peace, 'it shall be the duty of the justice to transmit all the papers relative to the trial of said cause on the second day of the court, to which said appeal is made returnable. The second section (Car. & Nich. 94) provides, 'that if any justice shall return the papers during the term to which the same is made returnable, and the appellant shall fail to appear and prosecute his appeal, provided he should be defendant, in the original suit, the plaintiff shall have judgment final by default, for the amount of the judgment of the justice; and, the court, on motion, shall enter judgment against him or them, his, her or their security or securities, for debt and costs. And if the plaintiff shall be appellant, and shall fail to appear within the term, he shall suffer a *non pros*, and the defendant, on motion, shall have judgment against him and his securities for all costs.'

"The provisions of this act, we think, are inconsistent with that portion of the Act of 1809, which authorizes an affirmance of the judgment, if the papers are not filed within the first two days of the term.

"The act of 1811, makes it the *duty* of the justice to file the papers within the time prescribed by the Act of 1809, but, then in the second section it provides, that the justice shall return the papers during the term to which they are returnable; and, if the appellant shall fail to prosecute his appeal, the plaintiff shall have judgment by default, it is evidently implied, that such judgment shall be rendered for the failure of the appellant to prosecute his appeal, and not for the failure of the justice to return the papers within the two first days of the term.

"The act contemplates a case, in which the justice shall fail to return the papers within the time prescribed in the first section. And, impliedly, authorizes the appellant to prosecute his appeal; because it gives the appellee the right to have judgment by default, or by *non pros* only, by reason of the failure of the appellant to prosecute his appeal.

"This act will have no operation, if the Act of 1809, remain in full force; because the Act of 1809, is much more stringent in its provisions than the Act of 1811. The Legislature in 1811, doubtless saw, that great hardship, and injustice would often be inflicted upon appellants from the judgments of justices of the peace, by the operation of the Act of 1809, without any fault on the part of the appellant.

"The papers of the justices are not under the control of the appellants; and if the justice, from negligence or wilful wrong, were to fail to file the papers, the appellant would have the judgment affirmed against him, and his only remedy would be an action against the justice.

"To remedy this evil, no doubt, the Act of 1811 provided, that the judgment against an appellant should be the result of his *own negligence* in his failure to prosecute the appeal.

"We think the Act of 1811 impliedly repeals the provision in question contained in the Act of 1809, and, therefore, that the judgment in this case is erroneous."

This holding was approved in *Pierce* v. *Pierce*, 36 Tenn., 77, decided in 1856.

In *Hayes* v. *Kelley*, 111 Tenn., 294, after reviewing numerous decisions of the court, prior to 1858, holding that the statutory time of filing the transcript in the circuit court on appeal from the county court is mandatory, it was said:

■ "So far as we can discover, there was no departure from the line laid down in these early cases up to the adoption of the Code in 1858. And it must be assumed that when this section was brought forward it was the legislative intent that the Code provision should have the same construction as was given by these authorities to the early act. For a long period of years, by courts and text-writers, it has been recognized as a sound rule that 'a settled judicial construction put upon a statute has almost the same authority as the statute itself; although the courts have the power to overrule their decisions and change the construction, they will not do so, except for a most urgent reason.' Black on Interpretation of Law, section 142; *Hammond* v. *Anderson*, 4 Bos. & P., 69; *King* v. *Younger*, 5 Durn. & E., 449; *King* v. *Inhabitants of Eccleston*, 2 East, 299; *People* v. *Albertson*, 55 N. Y., 50; *Beck* v. *Brady*, 7 La. Ann., 1; *Seale* v. *Mitchell*, 5 Cal., 401.

"No sound reason has been assigned why there should be a departure from a construction so long adhered to; rather, in fact, the same reason exists for a rigid enforcement of this statute as was given by the court in *Duncan* v. *McGee, supra,* and that is, to bring the cause to a speedy trial. If the statute was not held to be mandatory, it would be possible for an unscrupulous appellant to withhold the transcript to a day in the term when, on account of the pressure of other and preceding causes, a postponement of a trial to another term would be inevitable."

Notwithstanding the compliers of the Code were familiar with the construction placed upon the original acts by the court they made no essential change in their provisions; and we are unable to find in the sections quoted any language indicating a different meaning to that ascribed to them by the court.

This court had held in two published opinions that the two acts were inconsistent. It would seem that, in view of these holdings, the codifiers would have omitted the Act of 1811 had their purpose been to literally re-enact the rigorous provision of the Act of 1809.

It often happens that an appeal is taken merely for delay, and the appellant will advise the magistrate that he is not going to prosecute his appeal and that it is unnecessary to file the papers in the circuit court. To meet this situation, and others where the appeal has been abandoned and is not prosecuted, the statutes in question were enacted.

In our opinion, it was never the intention of the lawmakers to deprive a litigant, who is present in court at the first term demanding a trial, of a hearing upon the merits merely because the magistrate, for some rea-

son, has not filed the papers within the five-day period.

A litigant has "a speedy trial," within the meaning of that term, when he has his case disposed of at the first term.

The original construction given these acts accomplishes the purpose designed and effects justice between the parties. If the appellant desires a hearing at the first term, he can produce, or have produced, the papers and have the case docketed. If the appellant does not appear to prosecute his appeal at the first term, the appellee, upon the production of the papers, can have the judgment of the justice affirmed. The idea was to prevent an indefinite postponement of a trial.

As a practical proposition, we are unable to see how an appellant is going to obtain possession of the papers within the five-day period. There is no statute requiring the magistrate to deliver them to him. On the other hand, the statute requires the justice to file them with the clerk, and deprives him of his fees if he fails to do so. He would be within his rights in declining to deliver them to any other person than the clerk. If not filed within five days, the clerk could be compelled to do so upon petition for writ of *certiorari,* but that would be too late, if the five-day rule is given the construction contended for.

We are further of the opinion that it would be an unwise policy to turn over original papers of importance to any and every appellant who might demand them, thereby incurring the danger of having them lost or mislaid.

The legal profession has never construed these statutes to require them, or their clients, to stand guard over justices of the peace during the five-day period to

avoid losing the benefit of their appeals. To require this would work a great and unnecessary hardship.

The opinion in *Railroad* v. *Haynes, supra,* in effect, overruled *Humphrey* v. *Humphrey.* These statutes were construed in *Railroad* v. *Haynes* with a view of harmonizing the practice or system by which appeals are taken from the county court to the circuit court (sections 4879-4886 of Shannon's Code). It seems, however, that a very important distinction was overlooked, viz.: that where an appeal is perfected from the county court to the circuit court the clerk of the former court is required to make out a transcript of the record, certify same, and deliver it to the appellant, if demanded; otherwise he is to file it with the clerk of the circuit court on the first day of the next term, while no such procedure is authorized in appeals from justices of the peace to the circuit court.

Subsection 10 of section 5852 of Shannon's Code makes it mandatory on every clerk in the State to deliver a certified copy of any record in his office to any person applying for same. The procedure in cases appealed from justices of the peace is entirely different. In the one case an appellant is afforded the means of procuring the record while in the other he is not. It is manifest that the procedure in the two cases is quite different and cannot be harmonized.

For the reasons stated herein, we feel constrained to overrule *Railroad* v. *Haynes,* and adopt the construction of these statutes announced in *Humphrey* v. *Humphrey.*

It follows that the judgment of the trial court will be reversed, and the case remanded for a hearing upon the merits.

The appellee will pay the cost of the appeal.