INSURANCE COMPANY OF NORTH AMERICA, Appellant,

*v.*

JOHN R. LONG, JR., Commissioner, etc., Appellee.

389 S.W.2d 245.

(*Nashville,* December Term, 1964.)

Opinion filed March 16, 1965.

LAWRENCE DORTCH, Nashville, WALLER, LANSDEN & DORTCH, Nashville, of counsel, for appellant.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, WALKER T. TIPTON, Assistant Attorneys General, for appellee.

PER CURIAM.

Indemnity Insurance Company of North America, a Pennsylvania corporation, and a subsidiary of complainant, appellant here, for many years prior to January 1, 1961, was licensed to engage in all forms of insurance business, other than life and annuities, in this state.

On July 5, 1960, Indemnity entered into an agreement of liquidation and re-insurance with complainant, Insurance Company of North America, in which complainant agreed to "assume, pay and fulfil all debts and obligations of the subsidiary, including all taxes assessed or to be assessed against the subsidiary," and to re-insure all the business of Indemnity effective 12:01 A.M. Eastern Standard Time, January 1, 1961.

On August 17, 1960, Indemnity filed with the defendant, Commissioner of Insurance and Banking of this state, a statement of gross premiums paid by or for policyholders residing in this state on property located in this

state during the months of January through June 1960, and paid the tax of two percent of the gross premiums received as provided by T.C.A. sec. 56-408 for doing business in the state.

After the liquidation and re-insurance agreement between complainant and Indemnity became effective, the Commissioner, defendant herein, demanded that complainant file a return showing the gross premiums paid by or for the policyholders of Indemnity during the months of July through December 1960, and pay the two per cent tax thereon.

Negotiations with respect to this demand were carried on between complainant and defendant for a year or more. However, on April 16, 1962, complainant mailed a check to defendant in the amount of $17,928.87 as payment, under protest, of the tax shown to be due on the return filed by complainant, under protest, on December 7, 1961, showing the gross premiums paid by policyholders of Indemnity during the months of July through December 1960.

Thereafter, on May 15, 1962, complainant filed its original bill seeking a recovery of the amount paid under protest. The theory of the bill is the tax, as provided by T.C.A. sec. 56-408, is a prospective, rather than a retrospective privilege tax, and the payment made by Indemnity on August 17, 1960, measured by the gross premiums received by it during the first six months of that year, was for the privilege of doing business for the taxable period from July through December 1960, both inclusive.

The Commissioner, by his answer, took the position the tax was restrospective and the payment made by Indemnity in August 1960 was for the privilege of doing busi-

ness in the state for the first six months of the year 1960. Defendant further insisted in his answer Indemnity had not paid its privilege tax for the last six months of the year 1960.

It was stipulated by Counsel for the respective parties, prior to the trial of the cause, that Chapter 3 of the Public Acts of 1945, codified as T.C.A. secs. 56-408, 56-411 and 56-416, was enacted for the purpose to equalize taxation of domestic and foreign insurance corporations alike. That this tax took effect on January 26, 1945. That Indemnity filed a return for taxation and paid the tax thereon on August 2, 1945, covering the premiums received on its policies in this state from January through June 1945, both inclusive. That Indemnity has since that date filed returns and paid the tax due twice annually to and including the tax paid as of August 17, 1960.

The Chancellor held the tax to be prospective rather than retrospective.

However, he further held complainant was obligated to pay the tax on the gross premiums paid to Indemnity by or for its policyholders during the last six months of the year 1960 by virtue of T.C.A. sec. 56-419, which provides:

"Foreign companies — Tax upon business in force upon ceasing to transact new business—Failure to pay tax, penalty—Condition to obtain or renew license.— All foreign insurance companies, which shall take out or renew a license to transact business in this state, shall, upon the expiration of their licenses for any cause, or upon their ceasing to transact new business in this state, continue to pay the same tax upon their business remaining in force in this state, and in like manner, and at like times, as other insurance compa-

nies of the same class, which are duly licensed, are required to pay by any current law in force at such time. Such foreign companies as shall fail to pay the taxes required of them by this section, within sixty (60) days after the same are due, shall be liable for a penalty of fifty per cent (50%) in addition thereto, recoverable at law or in equity. A compliance with the provisions of this section shall be a condition upon which any foreign insurance company shall be authorized to obtain or renew a license, and the acceptance of these terms or conditions shall be conclusively presumed from the taking out or the renewing of such license.''

The Chancellor entered a decree dismissing the bill. Complainant filed a petition to rehear to which defendant filed an answer. The Chancellor denied the petition.

Complainant has appealed to this Court and has assigned errors complaining of the finding of the Chancellor the tax assessed against Indemnity for the last six months of 1960 was a valid assessment under T.C.A. sec. 56-419, and complainant having assumed the obligations of Indemnity was liable for the payment of the tax.

Complainant insists T.C.A. sec. 56-419 is not applicable to the facts of this case. Specifically, complainant contends this section has no application to liquidated corporations, but applies only to companies which have withdrawn from doing business in. this state and continue their existence elsewhere; and, too, that since complainant has taken over the assets of Indemnity and assumed its liabilities and obligations and is itself taxable in this state, there is no compelling reasons to apply T.C.A. sec. 56-419.

While it is true it has been held under some statutes a dissolution of a corporation prevents a subsequent assessment of a franchise or privilege tax for the following year, and relieves the company from a future obligation to pay the tax; yet, we think our statutes authorize a tax upon the annual premiums received during each six months and to be paid during the life of the policies upon which the premiums are received.

This section of the statute was so construed in the case of *State v. Continental Assurance Company,* 176 Tenn. 1, 137 S.W.2d 277, 138 S.W.2d 447 (1940); 311 U.S. 5, 61 S.Ct. 1, 85 L.Ed. 5, wherein it was said:

"We construe these provisions of the statute to mean that the tax is levied upon the right to do business in the state, measured by a percentage of annual premiums to the exclusion of all other taxes, the tax on the annual premiums to be paid throughout the life of policies issued. * * * It was levied when the company applied for and accepted license to do business in the state, and was measured by a percentage of premiums received annually throughout the life of policies issued."

Indemnity agreed to this construction of the statute by its compliance and cannot now repudiate its provisions.

■ It is a settled principle in this state that a "judicial construction put upon a statute has almost the same authority as the statute itself; although the courts have the power to overrule their decisions and change the construction, they will not do so, except for a most urgent reason." Black on Interpretation of Law, Section 142; *Hayes v. Kelley,* 111 Tenn. 294, 76 S.W. 891 (1903);

*Nash-Echoff Motor Company v. Kettlewell Bros.*, 160 Tenn. 186, 22 S.W.2d 231 (1929).

■ Complainant offers no sound reason why we should depart from the construction placed upon this section of the statute by the foregoing opinion. To the contrary, as stated, complainant assumed all the liabilities and obligations, including taxes, of Indemnity in its merger agreement. Thus, it is clear complainant assumed the obligation of Indemnity to pay the tax measured by a percentage of premiums received from the policies during the last six months of the year 1960 and for the life of those policies.

Nevertheless, complainant relies upon *State ex rel. Smrha v. General American Life Insurance Company*, 132 Neb. 520, 272 N.W. 555, for its insistence that neither it nor Indemnity owed the tax. That opinion, however, was based upon a statute which is materially different from our statute. Moreover, complainant expressly agreed to assume this obligation in the instant case.

Should we place a construction on the statute as insisted by complainant, then we would have to read into the statute an exemption or an exception. The statute is explicit in stating "[a]ll foreign insurance companies * * * shall * * * upon the expiration of their licenses for any cause, or upon their ceasing to transact new business in this state, continue to pay the same tax upon their business remaining in force in this state, and in like manner, and at like times, as other insurance companies of the same class * * *."

It is obvious from the unambiguous wording of the statute there is no exemption or exception from the tax

of an insurance company which has become liable for it merely because it has been taken over by another.

We think complainant has failed to show its right to an exemption. This being true, we cannot read into the statute an exemption.

"There must be an affirmative showing by the taxpayer of his right to the exemption, because taxation is the rule, and exemption from taxation is the exception." *Nashville Tobacco Works v. City of Nashville,* 149 Tenn. 551, 260 S.W. 449 (1923); *General Telephone Company of the Southeast v. Boyd,* 208 Tenn. 24, 343 S.W.2d 872 (1961).

The statute does not provide an exception for insurance companies which are merged or dissolved and do not continue to do business elsewhere.

██ To ascertain the legislative intent is a cardinal rule in the construction of statutes, and where exceptions are not made in the provisions of a general statute, the courts cannot create such. *Forrest v. State,* 154 Tenn. 13, 285 S.W. 589 (1926).

As said in the case of *Hickman v. Wright,* 141 Tenn. 412, 210 S.W. 447 (1918):

"The universal rule seems to be that if the actual language and provisions of the statute are plain and clear, and are devoid of contradiction or any affirmative ambiguity, so that the statute, as the result of the expressed provisions, is not reasonably susceptible of a twofold meaning, then there is no room for applying any other rules or canon of construction to the act."

It is clear to us that when complainant took over the assets of Indemnity and assumed its obligation, it be-

came liable for the tax, although Indemnity discontinued doing business in this state and elsewhere. This is so because the tax is prospective as held by the Chancellor and with which complainant has no quarrel. The policies of Indemnity remained alive and became assets of complainant. In other words, complainant stepped into the shoes of Indemnity with respect to Indemnity's policies issued to persons in this state and was entitled to the premium to be paid after December 31, 1960. And in order to carry on that business during the ensuing six months, complainant became liable for the tax measured by a percentage of the premiums collected by Indemnity during the last six months of the year 1960. The tax became due and payable on or before March 1, 1961, as provided by T.C.A. sec. 56-408.

The foregoing finds support in T.C.A. sec. 48-505; *Miller v. Lancaster,* 45 Tenn. 514 (1868) ; *Memphis Water Co. v. Magens,* 83 Tenn. 37 (1885) ; *First Nat. Bank of Chattanooga, Tenn. v. Harry E. Chapman Co.,* 160 Tenn. 72, 22 S.W.2d 245 (1929).

In *Miller v. Lancaster,* supra, it is said:

"Where such consolidation and merger of corporations are made, and such transfer of rights and properties, and assumption of liabilities between the old and new companies are effected, the new company stands in the stead of the old companies, and may enforce the rights of the old companies, and be subjected to their liabilities."

It results that complainant's assignments are overruled and the Chancellor's decree affirmed with costs.