WARNER–TAMBLE CO., INC., d/b/a
River–City Harbor Service, Inc.,
Plaintiff–Appellee,

v.

Dudley W. TAYLOR, Commissioner of
Revenue, Department of Revenue, State
of Tennessee, Defendant–Appellant.

Supreme Court of Tennessee,
at Jackson.

Oct. 9, 1989.

Charles W. Burson, Atty. Gen., & Reporter, William P. Sizer, Asst. Atty. Gen., Nashville, for defendant-appellant.

John D. Walt, George G. Leavell, Memphis, for plaintiff-appellee.

## OPINION

FONES, Justice.

This is a direct appeal by the defendant, Commissioner of Revenue, from a decision of the trial court that plaintiff-taxpayer, Warner–Tamble Company, Inc., d/b/a/ River–City Harbor Service, Inc., did not owe the sales taxes assessed by defendant.

The case was tried upon a written stipulation of facts. Plaintiff, "operates a river harbor service and performs services such as towing, fleeting and preparing barges for barge companies, pursuant to barge affreightment contracts." The sales taxes at issue were assessed for the calendar years 1984, 1985 and 1986, "for preparatory services River City performed on barges engaged in the interstate transportation of commodities and other cargo."

Plaintiff contends that the services performed pursuant to barge affreightment contracts were repair services to barges of 50 tons or more, that were engaged in interstate commerce and that such services are expressly exempt under T.C.A. § 67–6–327.

That code section reads as follows:

**67–6–327. Vessels and barges—Repairs.**—There shall be exempt from the tax imposed by this chapter, repair services performed on vessels and barges of fifty (50) tons and over load displacement, which are used principally in interstate or international commerce, and the parts, accessories, materials and supplies used in such repairs where the parts, accessories, materials and supplies be-

come component parts of such vessels and barges. For purposes of this section, repair services shall include renovations and improvements to such vessels and barges. This exemption shall not apply to fuel and other petroleum products or to shop equipment and tools.

The stipulation filed in this cause acknowledges that 99 percent of the barges prepared by plaintiff during the relevant period were engaged in interstate commerce immediately before and immediately after the services performed by plaintiff and that all barges were of 50 tons and over load displacement. Thus, two of the three conditions for the exemption provided in T.C.A. § 67–6–327 were expressly stipulated, leaving only the issue of whether the services performed by plaintiff were "repair services" within the meaning of the exemption statute.

 Commissioners contention is that all of the services performed upon the barges by plaintiff fall within the classification of "cleaning services" and thus does not qualify for the category "repair services." Commissioner recites numerous dictionary definitions of "repair" and concludes that the word connotes making changes or additions to something and does not include cleaning.

Plaintiff calls attention to other dictionary definitions of "repairs" as including "restoration to soundness; reparation; work done to property to keep it in good order." *Black's Law Dictionary* 1462 (4th ed. 1968). Plaintiff insists that the parties have stipulated that the preparatory services it performs clearly fall within that definition of repairs.

The stipulation relied upon by plaintiff for that conclusion, follow:

7. The preparatory services performed by River City are not for aesthetic purposes, but rather to protect and insure public health and safety by protecting and maintaining the integrity of the commodity to be shopped in the barge.

8. The National Soybean Processors Association Rules, Barge Freight Trade Rules of the National Grain and Feed Association and the Federal Grain Standards Act (copies of which are attached hereto as Exhibits D, E and F, respectively, and incorporated by reference herein) all require that barges carrying commodities must be in a clean and sanitary condition before they can be loaded.

. . . . .

16. Interstate barge affreightment contracts require the provider of barges (barge companies) to perform or provide, among other things, the following services:

. . . . .

d. Determination of actions required, if any, to improve, maintain or restore condition of the barge to meet specifications established by the trade association rules.

e. Final preparation of barge for loading according to findings of step "d" above. This may involve any or several of the following: sweeping, scrubbing, washing, fumigating, chemical treatment, rust removal, dirt removal, and dunnage removal.

. . . . .

18. The preparatory services performed by River City are designed to restore barges to the condition they maintained immediately prior to the transporting of their previous cargo.

19. Preparatory services are utilized to prevent barge storage areas from deteriorating to a condition that is unacceptable, under industry regulations and federal law, for transporting commodities.

. . . . .

27. After transporting most commodities, the storage area of a barge is considered, pursuant to industry standards and practice, to be in an unclean and unsanitary condition for purposes of loading a new commodity unto the barge.

. . . . .

35. The preparatory services performed by River City restores the condition of the barges to conform with industry health and safety regulations con-

cerning barges that are utilized in the interstate transportation of commodities.

The trial judge held that:

[T]he services in question are indeed repair services because all of the definitions examined, including the Commissioner of Revenue's own definition, which carries added weight of authority in this court's mind, contain the common element or idea of placing in restoration an object, such as a barge, which has need, or is required by law, to be put in a state of good repair.

The Commissioner of Revenue's definition that the trial judge relied upon is the only definition of "repair services" found in the Sales and Use Tax Act or in the regulations thereto. The relevant part of that definition in Section 1320-5-1-.54 is as follows:

(2) For the purposes of this rule, "repair services" and "repairs" of tangible personal property shall mean and include any one or all of the following for a user and consumer: work done to preserve or restore to or near the original condition made necessary by wear, normal use, wastage, injury, decay, partial destruction, or dilapidation; the mending, correction, or adjustment made for any defect or defective portion; alterations; refinishing; maintenance, preventive maintenance, or warranty contracts; any cleaning that is a necessary part of any repair work.

The Commissioner takes the position in this Court that that definition was promulgated to define the scope of the *taxing statute* and by implication, that it does not apply to the exemption statute. He also calls our attention to the principles that doubts about the construction of taxing statutes are resolved in favor of the taxpayer, but exemptions are construed against the taxpayer, citing *Le Tourneau Sales v. Olsen*, 691 S.W.2d 531 (Tenn.1985). He further observes that he has no authority to expand the scope of an exemption statute by promulgating a rule. It appears that the Commissioner is advocating the position that he can tax a service as a "repair service" under T.C.A.

§ 67-6-102(13)(F)(iv), as within the definition in Regulation 1320-5-1-.54 and deny that the regulation has the same meaning when applied to an exemption of "repair services" in T.C.A. § 67-6-327. We reject the notion that the strict-liberal dichotomy of taxing-exemption statutes permits a different interpretation of the language defining a taxable activity for taxation purposes, from that defining the same taxable activity for exemption purposes.

We are of the opinion that the services performed by plaintiffs to comply with the Federal Grain Standards Act and trade associations requirements for the transport of commodities are a repair service under the Commissioner's definition and that that definition quoted above applies to the exemption in T.C.A. § 67-6-327.

Having found plaintiff entitled to the benefit of the exemption statute, we pretermit its additional contention that the services sought to be taxed are exempt under T.C.A. § 67-6-313 as services performed in bona fide interstate commerce.

The judgment of the trial court is in all respects affirmed, and this case is remanded to that court for a determination of the amount of interest and attorneys fees due plaintiff pursuant to T.C.A. § 67-1-1803 and entry of an appropriate decree.

COOPER, O'BRIEN, JJ., concur.

DROWOTA, C.J., and HARBISON, J., dissent.

HARBISON, Justice, dissenting.

I respectfully dissent. The tax in the present case was imposed under the provisions of T.C.A. § 67-6-102(13)(F)(v), which includes within the term "sale at retail" the following:

The laundering or dry cleaning of any kind of tangible personal property....

There follow a number of exceptions or exemptions, none of which is involved in the present case.

The immediately preceding section, subdivision (iv), makes taxable repair services to any kind of tangible personal property. The provisions of T.C.A. § 67-6-327, in-

voked by the taxpayer in the present case, are an exception to subdivision (iv). Otherwise repair services to barges are generally taxable. *Serodino, Inc. v. Woods*, 568 S.W.2d 610 (Tenn.1978).

To the extent that the services involved in the present case are cleaning or laundering, in my opinion they are taxable. In the case of *ARB Enterprises, Inc. v. Olsen*, 647 S.W.2d 939 (Tenn.1983) the Court held the operations of a taxpayer to be taxable. Those operations were described as follows:

> Taxpayer is a franchised cleaning operation that utilizes van mounted, mobile pressure washing units. The vans go to its customer's locations and clean trucks, vans, motor vehicles, buildings, houses, etc.

647 S.W.2d at 940.

To the extent that the taxpayer's operations in the present case constitute repairs, renovations or improvements, they are exempt. All of the services rendered by the taxpayer in the present case, however, are described in the bill of complaint as cleaning services, and it is clear from the questioning of counsel in depositions attached as exhibits to the stipulation that the State only attempted to tax services which it deemed to be cleaning, and not repairs.

Most of the barges involved in the present case appear to have been involved in the transportation of grain. It was stipulated that the cleaning and sanitizing of most grain barges take from two to four hours. The cleaning and preparation of barges transporting rice usually take from four to six hours.

It is obvious that not a great deal of repairing, renovation or improving a large commercial barge can take place within these short time periods. In the *Serodino* case, barges were taken out of a navigable stream, placed in dry dock and extensively overhauled.

It is true, as pointed out in the majority opinion, that the parties stipulated that the various services of the taxpayer "may involve" such things as rust removal, dunnage removal, fumigating and chemical treatment. They also involve sweeping, scrubbing, washing and removal of dirt.

By some definitions, the removal of rust or certain types of chemical treatment might be deemed to be a "repair" or a "renovation" or "improvement." Certainly the other services, however, amount to nothing more than cleaning. There is no allocation by percentage, cost or otherwise among the various services rendered by the taxpayer, and, as alleged in its own bill of complaint, the services are generically referred to as cleaning services. Their primary purpose is to make the barges sanitary and to meet various health code requirements.

In my opinion one would not deem the mopping or sweeping of a restaurant in order to meet code requirements as a repair, renovation or improvement of the restaurant. Neither are these services, in my opinion, repairs, renovations or improvements of commercial barges. The taxpayer in this case is claiming an exemption, and the burden of proof rested upon it to show that its services fell within the terms of the exemption claimed. In my opinion the taxpayer has failed to carry the requisite burden of proof.

I do not believe that the taxpayer's alternative argument, in which it claims an exemption on grounds of the commerce clause, is even tenable. The taxpayer is situated in Tennessee, and its services are performed on barges which are an instrumentality of interstate commerce, but all of the services are simply preparatory for the entry, or re-entry, of the barges into such commerce. I do not believe that cleaning barge is any more exempt as interstate commerce than the cleaning of trucks or vans which move in interstate commerce, such as were involved in the *ARB Enterprises, Inc.* case, *supra*. A similar contention was considered and rejected by the Court in the *Serodino* case, discussed above.

In my opinion the taxpayer has not shown itself entitled to the exemption claimed. I would reverse and dismiss the

**444**

action. Chief Justice DROWOTA concurs in this dissenting opinion.