# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 1, 2003 Session

## HOLLINGSWORTH, INC. , a.k.a. LONG HEALTH ENTERPRISES, INC. v. RUTH E. JOHNSON, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

### Appeal from the Chancery Court for Anderson County
### No. 99CH7998     William E. Lantrip, Chancellor

### FILED NOVEMBER 12, 2003

### No. E2002-02561-COA-R3-CV

---

This appeal questions the holding of the Trial Court regarding the right of a corporation to claim bad debt credits for sales tax remitted relative to health club membership contracts which were subsequently defaulted upon. We affirm in part and reverse and dismiss in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed and Dismissed in Part; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Paul G. Summers, Attorney General & Reporter, and Mary Bernadette Welch, Assistant Attorney General, Nashville, Tennessee, for the Appellant, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee

George H. Buxton and Harold P. Cousins, Jr., Oak Ridge, Tennessee, for the Appellee, Hollingsworth, Inc. a.k.a. Long Health Enterprises, Inc.

## OPINION

Prior to February of 1993, Long Health Enterprises, Inc, (hereinafter "Long Health")operated three health clubs in Knoxville under the name Court South. Membership contracts between Long Health and club members typically provided that after an initial down payment members were obligated to pay monthly dues for either one year or thirty six months and under life time membership contracts the fee for membership was paid in full when the contract was signed. All state and local sales taxes due on the membership contracts were remitted by Long Health to the Department of Revenue at the time the contracts were signed. (The Appellant, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee, will hereafter be referred to as "the Department.")

In October of 1991 Long Health filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code and in January of 1993, with the approval of the bankruptcy court, the assets of Long Health, including the Court South health clubs, were purchased by Joseph A. Hollingsworth, Jr. free and clear of all existing liens and claims with a warranty that Long Health had paid, or would adequately provide for the payment of, all taxes. In acquiring the assets of Long Health, Mr. Hollingsworth was required to assume the duties of honoring the Court South membership contracts. Although Mr. Hollingsworth purchased Long Health's assets at this time, he did not purchase its capital stock

On February 16, 1993, pursuant to a document entitled Assignment and Bill of Sale of Contract Rights, General Intangibles, and Accounts Receivable, Mr. Hollingsworth transferred the Long Health assets purchased by him the previous month to the Appellee, Hollingsworth, Inc. (hereinafter "Hollingsworth") for the sum of "One Dollar ($1.00) and other good and valuable consideration."

In the latter part of 1993, Hollingsworth, determined that some of the membership contracts it had assumed were bad debts and began taking bad debt credits on its Tennessee State and Local Sales and Use Tax Returns. In consequence of these bad debt credits, Hollingsworth calculated that it owed zero taxes on returns filed for periods from August of 1993 through December of 1998.

In 1995 the Tennessee Department of Revenue (hereinafter "the Department") conducted a sales and use tax audit of Hollingsworth for the period of June 6, 1993, through December 31, 1994. The auditor found no adjustments for which to make an assessment and approved bad debt deductions claimed by Hollingsworth in the amount of $2,242,180.00 based on the belief that Hollingsworth had purchased Long Health's capital stock as well as its assets.

In 1999 another audit was conducted by the Department for the periods from October 1, 1995, through December 31, 1998. This audit resulted in the disallowance of bad debt deductions in the amount of $2,043,698.00 claimed on returns for those periods upon a determination by the Department that Hollingsworth was not the "dealer" who paid the taxes under T.C.A. 67-6-507(e)(1) It is also stated in the audit report that "[t]he bad debt deduction is being denied because the taxpayer did not buy the capital stock of Long Health Enterprises, Inc." In consequence of the disallowance of the bad debt deductions Hollingsworth owed taxes in the amount of $168,605.00 plus interest.

Hollingsworth paid the amount assessed and then filed a claim for refund which was denied upon determination by the Department that Hollingsworth did not purchase Long Health's capital stock when it purchased Long Health's assets in 1993 and was not the dealer who paid the sales taxes as required under T.C.A. 67-6-507(e)(1). On November 16, 1999, Hollingsworth filed suit in the

Knox County Chancery Court seeking a refund of the taxes paid[1] in compliance with the Department's audit.

After filing suit Hollingsworth acquired the capital stock of Long Health and Hollingsworth and Long Health executed a document which states that it assigns the sales tax credits at issue to Hollingsworth in consideration of one dollar and other good and valuable consideration. Thereafter, on March 21, 2001, Hollingsworth merged into Long Health, with Long Health as the corporation surviving the merger.

On September 10, 2002, the Trial Court entered its opinion finding that the transfer of Long Health's assets to Hollingsworth during the bankruptcy proceeding included transfer of the right to receive the bad debt tax credits upon default of membership contracts. Pursuant to this finding the Court ordered the Department to refund Hollingsworth $162,665.00 plus interest. Thereafter, the Department filed this appeal.

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the Trial Court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996) and T.R.A.P. 13(d). The Trial Court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993). In the matter now before us the facts are not disputed. Therefore, it is our duty to determine whether the Trial Court erred in its conclusions of law.

The issue presented for our review, as restated, is whether T.C.A. 67-6-507(e) permits Hollingsworth to offset taxes it owes by utilizing bad debt credits resulting from the default of membership contracts originally entered into between Long Health and members of its Court South health clubs.

T.C.A. 67-6-507(e)(1) permits a dealer a credit on his tax return under ceratin circumstances as follows:

> A dealer who has paid the tax imposed by this chapter on any sale as defined in § 67-6-102 may take credit in any return filed under the provisions of this chapter for the tax paid by the dealer on the unpaid balance due on accounts which, during the period covered by the current return, have been found to be worthless and are actually charged off for federal income tax purposes; provided, that if any accounts so charged off are thereafter in whole or in part paid to the

---

[1] While this case was pending in the Trial Court an error was discovered in favor of Hollingsworth in the amount of $5,940.00 and, as a result, the amount now in dispute totals $162,665.00 plus interest based on the disallowance of bad debts totaling $1,971,698.00. (The Department states that Hollingsworth claimed sales tax credits on returns filed for the periods of August 1993 through September 1995 in the total amount of $203,863.02 based on total bad debts attributable to the Court South clubs in the amount of $2,471,067.00. The Department asserts that it is prohibited from recovering this $203,863.02 because the statute of limitations has run.)

dealer, the amounts so paid shall be included in the first return filed after such collection and the tax paid accordingly.

Neither party questions the fact that sales taxes due on membership contracts were remitted to the State by Long Health when the contracts were entered into, that some of those contracts were subsequently defaulted upon and that, as a result, bad debt sales tax credits became available pursuant to the above statute. However, the Department disagrees that Hollingsworth is the entity entitled to claim such credits.

The Department argues that Long Health, not Hollingsworth, made the membership sales on credit and assumed the risk of nonpayment. The Department notes that Hollingsworth only purchased the assets of Long Health in 1993 and did not purchase Long Health's capital stock and assume the liabilities associated with ownership of that stock until 2001. The Department maintains that, because Hollingsworth never incurred the expense of paying the sales tax due on the defaulted contracts it is not entitled to claim the bad debt credits allowed under T.C.A. 67-6-507(e)(1). The Department argues that Hollingsworth is not, in the words of the statute, the "dealer who has paid the tax" and that credits for taxes on uncollected accounts are limited to the original seller.

Hollingsworth notes that the parties have stipulated that, in acquiring the assets of Long Health in 1993, it "was required to take over the operation of three (3) health clubs, perform the membership contracts, receive income from the membership contracts, and provide health club services for all club members pursuant to their membership contracts." Hollingsworth notes that it acquired 11,000 membership contracts from Long Health and that it serviced all of those contracts, including those contracts which were defaulted upon. Hollingsworth maintains that the argument that it never incurred the expense of paying the sales tax ignores the cost incurred in its purchase and assumption of obligations associated with the health club membership contracts. Hollingsworth argues that, by honoring all these contracts, it provided valuable consideration for any tax credits, even though it did not specifically identify an amount to be paid for such tax credits when it purchased Long Health's assets in 1993.

Both parties and the Trial Court, in its opinion, reference *Suntrust Bank, Nashville v. Johnson*, 46 S.W.3d 216 (Tenn. Ct. App. 2000). In *Suntrust* the plaintiff bank entered into financing agreements with various automobile dealers to provide financing for customers of those dealers seeking to purchase an automobile on credit. At the time of purchase the dealer and purchaser would customarily enter into a retail installment sales contract with the automobile serving as security. This retail installment sales contract financed the unpaid portion of the purchase price, dealer charges and all sales tax due as a result of the sale. After the sale was complete the dealer would then sell the retail installment contract to the bank at a discount and assign the bank all its right title and interest in the contract without recourse. Upon receipt of the contract the bank would pay the dealer the amount upon which they had agreed, including the total sales tax due on the sale of the automobile and this sales tax amount was then remitted to the State by the automobile dealer. Under the facts in *Suntrust,* several purchasers of automobiles defaulted upon contracts purchased by the bank and, as a result, the bank wrote off the amounts outstanding under those contracts as uncollectible bad

debt and filed a claim with the Department of Revenue for a refund of sales tax attributable to the contracts. The Department denied the claim for refund based upon Tenn. Comp. R. & Regs. r. 1320-5-1-.52(3) which disallows sales tax refunds to banks purchasing installment sales contracts without recourse. The bank then filed suit against the Department in chancery court and the court decreed that the refund should be denied because the bank was not the dealer that paid the taxes at issue as required under T.C.A. 67-6-507(e)[2]. This judgment was affirmed on appeal.

Hollingsworth asserts that *Suntrust* and the present matter are distinguishable, contending that our decision in *Suntrust* was based on the regulation set forth at Tennessee Comp. R. & Regs. r. 1320-5-1-.52(3)(1990) and its interpretation by the Department. Hollingsworth also notes our statement in *Suntrust* that it is "reasonable to assume that the General Assembly is aware that automobile dealers customarily assign retail installment sales contracts to banks and other financial institutions." Hollingsworth's apparent argument is that our holding in *Suntrust* pertains only to banks purchasing retail sales contracts without recourse from automobile dealerships. We disagree.

In *Suntrust* our analysis of the bank's claim for a refund began with the following statement on page 223 regarding the issue under review:

> We are called upon to determine whether the purchaser of a retail installment sales contract from a dealer who actually remitted the sales tax resulting from the sale of tangible personal property is entitled to the same "bad debt" sales tax credit that the dealer itself would have been entitled to had it not assigned its rights.

There is nothing in this statement which limited the issue to contracts without recourse between banks and automobile dealerships. Thereafter, we stated that "[a]rriving at the answer is essentially an exercise in statutory construction because [the bank's] rights, if any, must be found in Tenn. Code Ann. § 67-6-507(e)(1) and other relevant portions of the Retailer's Sales Tax Act." We then proceeded to analyze T.C.A. 67-6-507(e)(1) pursuant to recognized rules of statutory construction, among them the rule that a court should assign statutory language its natural and ordinary meaning unless the context requires otherwise. Employing this rule, we found as set forth on page 225:

> By the statute's plain terms, the sales tax credit is available only to the "dealer who has paid the tax imposed by this chapter." This language is unambiguous and cannot reasonably be construed to include the assignees of dealers who have paid the sales tax."

This finding was not limited in any way to assignments between financial institutions and automobile dealers. After making this finding, based upon the plain meaning of the statute, we went

---

[2]Although T.C.A. 67-6-507(e)(1) authorizes credits rather than refunds, a footnote in *Suntrust* recognizes that T.C.A. 67-1-1802 allows a taxpayer who initially fails to claim a credit, as did the bank, to claim a refund of taxes overpaid as the result of such failure.

on to note that our interpretation of the statute was "buttressed" by the Department's long standing interpretation of the statue as reflected in Tenn. Comp. R. & Regs. r. 1320-5-1-.52(3) and that the regulation was consistent with the statute, the bank's assertion to the contrary notwithstanding. In view of our finding that the regulation was based upon a reasonable interpretation of the statute and that the regulation "had been consistently administered by the Department without challenge over a long period of time" we accorded the Department's interpretation of the statute "great weight."

Our primary finding in *Suntrust* was an unqualified finding that under T.C.A. 67-6-507 (e)(1) sales tax credits under the statute are only available to the dealer who paid the tax. In the instant matter it is stipulated that Long Health, not Hollingsworth, remitted to the Department all state and local sales tax due on the membership contracts. Consistent with *Suntrust*, we do not find that T.C.A. 67-6-507(e)(1), which makes the sales tax credits only available to a "dealer who has paid the tax imposed by this chapter", allows tax credits to the assignee of a dealer who has paid the tax.

Hollingsworth asserts that it assumed the obligation of servicing all of the membership contracts assigned to it by Long Health, including those contracts which were defaulted upon, and that it was required to do this by the bankruptcy court as a condition of purchase. Hollingsworth argues that the costs incurred in servicing these contracts provided valuable consideration for any tax credits, "even though it did not specifically identify in its purchasing agreement an amount paid or to be refunded for tax credits" it was to later claim. Hollingsworth references the assignment between the parties in *Suntrust* noting that in that case the bank was not assigned obligations arising under the contracts between the dealers and automobile purchasers, whereas in the present matter Hollingsworth did assume the obligation to service the contracts in question.

In this matter, as in *Suntrust,* we find no explicit assignment of the right to obtain a bad debt sales tax credit under T.C.A. 67-6-507(e)(1). Although there was no such assignment Hollingsworth evidently argues that its right to the bad debt credits comes about as a result of the fact that it was required to assume the obligations arising under the contracts on which the taxes were paid. The Trial Court found that " a valid assignment of the tax credits [*in Suntrust*] would have rendered a different result"in that case and that in the present matter "the right to receive these credits were effectively transferred in the bankruptcy proceedings." We respectfully disagree with both Hollingsworth and the Trial Court. In *Suntrust* we recognized that "[o]ne of the general principles of the law of assignments is that the assignee 'steps into the shoes of the assignor' with regard to the matters covered by the assignment." However, we further noted that "the traditional principles of statutory construction applicable to statutes granting tax credits, deductions, or exemptions, should prevail over general assignment principles.(citations omitted) Statutes providing exceptions from taxation should be construed strictly against the taxpayer." We believe that this policy holds true under the circumstances of the present case and we are compelled to construe the plain language of T.C.A 67-6-507(e)(1) against Hollingsworth notwithstanding the assertion that it was transferred the tax credits at issue.

Hollingsworth also argues, in accordance with the Trial Court opinion, that its merger into Long Health in March of 2001 entitles it to claim the sales tax credits in question. From its post

merger stance as a corporate entity merged into Long Health, Hollingsworth asserts that "Long is the new company and stands in the shoes of Hollingsworth and Long Health, and may enforce the rights of these companies and be subjected to the liabilities of the assigned contracts." Hollingsworth cites two cases in support of this argument - *Little Six Corp. v. Johnson*, an unreported opinion of this court filed in Nashville on May 28, 1999, and *Insurance Company of North America v. Long*, 389 S.W.2d 245 (Tenn. 1965).

Under the facts in *Little Six*, in 1987 the Little Six Corporation began a new business entitled Short Mountain[3]. In 1989 Little Six merged with Short Mountain with Little Six as the surviving corporation. After the merger Little Six attempted to claim excise tax deductions under T.C.A. 67-4-805(b)(2)(C)(i)[4] for net operating losses which had been generated by Short Mountain prior to the merger. The Department of Revenue denied the deductions based upon its Revenue Rule 1320-6-1-.21(2)(d) which provides as follows:

> Each corporation is considered a separate entity; therefore, in case of mergers, consolidations, etc. no loss carryovers incurred by the predecessor corporation will be allowed as a deduction from net earnings on the tax return of the successor corporation.

The taxpayer filed suit requesting that it be allowed the loss carryovers. The trial court allowed the deductions based on federal case law, which allows loss-carryover deduction as long as the business seeking to use the deductions is substantially the same business that is responsible for the loss and the profits it is seeking to offset. The trial court also relied upon T.C.A. 48-21-108 which provides that the property and liabilities of merging corporation are vested in the surviving corporation. This court, however, reversed the trial court noting that Tennessee has never adopted the federal continuity of business test relied upon by the trial court and that the excise statutes and corporate merger statutes are not *in pari materia* and should not be construed as such. We noted that the revenue rule relied upon in the denial of the loss carryover deductions was promulgated prior to T.C.A. 67-4-805(b)(2)(C)(i) and the legislature did not draft the statute in such a way as to render the rule inoperative, although it could have done so.

We acknowledged in *Little Six* that had Little Six merged into Short Mountain then Short Mountain would have been entitled to the deduction. Hollingsworth argues that, having merged into Long Health, it is in the position that Little Six would have been in had it merged into Short

---

[3]The opinion also refers to this business as Sand Mountain.

[4]T.C.A. 67-4-805(b)(2)(C)(i) provides in pertinent part that there shall be subtracted from taxable income "[a]ny net operating loss incurred for fiscal years ending on or after January 15, 1984, "net operating loss" being defined as the excess of allowable deductions over total income allocable to this state for the year of the loss, and which may be carried over and allowed in succeeding tax years until fully utilized in the next succeeding taxable year or years in which the taxpayer has net income , but in no case for more than fifteen (15) years after the taxable year in which the net operating loss occurs."

Mountain. Accordingly, Hollingsworth contends that it is entitled to the sales tax credits just as Short Mountain would have been entitled to the loss carryover deductions. We disagree.

First of all we are compelled to point out that our acknowledgment that Short Mountain would have been entitled to the deduction had it survived the merger in *Little Six* constitutes *obiter dictum* and, as such, is not binding precedential authority under the doctrine of *stare decisis. Shepherd Fleets, Inc. v. Opryland USA*, *Inc.* 759 S.W.2d 914 ( Tenn. Ct. App. 1988). In any event, we do not agree that our decision in *Little Six* is relevant under the circumstances of the present matter. In *Little Six* we were seeking to determine the taxpayer's right to net operating loss deductions based upon an analysis of T.C.A. 67-4-805 and Revenue Rule 1320-6-1-.21(2)(d) neither of which is applicable in the present matter. Our decision in the case now before us is compelled, as discussed above, by our construction of the specific statutory language of T.C.A. 67-6-507(e)(1), not the language of the law which we analyzed in *Little Six.* The argument that our decision in *Little Six* requires that we allow Hollingsworth the sales tax credits it seeks in the present case is without merit.

Hollingsworth contends that discriminating between net operating losses and bad debt credits and between sales taxes and excise taxes constitutes the employment of a double standard. Holllingsworth cites *Warner-Tramble Company, Inc. v. Taylor*, 778 S.W.2d 440 (Tenn.1989) for the proposition that the Department is prohibited "from applying one definition for taxing purposes and a different definition for exemption purposes." In *Warner-Tramble* our Supreme Court held that the state commissioner of revenue could not tax a service as a "repair service" under taxing regulations and then deny that the same service was a "repair service" for exemption purposes under the applicable statute. We do not find that the Court's holding in *Warner-Tramble* is relevant under the circumstances in the instant matter where there is no attempt by the Department to apply varying definitions to the same term for purposes of taxation and exemption. The right to bad debt credits for sales taxes and the right to claim excise deductions for net operating losses are different matters subject to separate analysis.

Finally, Hollingsworth cites *Insurance Co. of North America v. Long*, 389 SW2d 245 (Tenn. 1965) as support for its argument that its merger into Long Health entitles it (Hollingsworth) to utilize the bad debt sales tax credits. Specifically, Hollingsworth sets forth at page 248 the following language from *Miller v. Lancaster*, 45 Tenn. 514 (1868):

> Where such consolidation and merger of corporations are made, and such transfer of rights and properties, and assumption of liabilities between the old and new companies are effected, the new company stands in the stead of the old companies, and may enforce the rights of the old companies, and be subjected to their liabilities.

Hollingsworth states that, as the new company resulting from the merger in the present matter, Long Health now "stands in the shoes of Hollingsworth and Long Health, and may enforce the rights of these companies and be subjected to the liabilities of the assigned contracts."

Hollingsworth also relies upon T.C.A. 48-21-108(a)(2) which provides that when there is a merger of corporations "[a]ll property owned by each corporation ... that is a party to the merger shall be vested in the surviving corporation without reversion or impairment."

We do not agree that the merger in 2001 placed the survivor of the merger in Long Health's position as it was in 1993. The articles of merger entered into by the parties in this case state that "the merger is to be effective when these articles are filed by the Secretary of State." The record shows that the articles of merger signed by Long Health and Hollingsworth were received by the Secretary of State on March 19, 2001. T.C.A. 48-21-108(a)(1) provides that "[w]hen a merger becomes effective ... the corporation ... that is a party to the merger or is created thereby and is designated in the plan of merger as an entity surviving the merger shall survive, and the separate existence of every other corporation ... that is a party to the merger shall cease." We construe the language of this statue to mean, as the Department argues in its brief, that until the merger is effective the separate identity of each party to the merger continues to exist and each corporation retains its separate assets and liabilities. It is our determination that the bad debt tax credits at issue were no longer available at the time of the merger in March of 2001 and, therefore, cannot be claimed by the survivor.

T.C.A. 67-6-507(e) allows a dealer who has paid sales taxes on worthless accounts to take a credit for such taxes on the tax return which covers the period in which the account was determined to be worthless and was declared uncollectible. Alternatively, it appears that under T.C.A.67-1-1802(a) such dealer can claim a refund of the overpayment which resulted from its failure to claim the credit to which it was entitled; however, this must be done within three years from December 31 of the year in which the payment was made. We have determined that the dealer in this case, for purposes of T.C.A. 67-6-507(e), was Long Health; however, Long Health never followed the requisite procedure for claiming the bad debt credits in question.

Hollingsworth argues that auditor Marcum's 1995 approval of bad debt deductions in the amount of $2,242,180.00 amended the tax returns reviewed in that audit based on the parties' stipulation that "[a]n audit is deemed to amend the tax returns which are the subject of the audit if changes are made to those returns as a result of the audit." Hollingsworth contends that "[o]nce these credits were audited and in the Department's system, Hollingsworth, Inc. had the right to carry them forward for credit against future sales tax owed without any limitation period. Therefore, Long Health, the surviving corporation of the merger, between Long Health and Hollingworth, Inc., had the right in 2001 to utilize the bad debt credits which had been audited in 1995 and placed in the system." We disagree. As previously noted, the auditor's approval of the deductions claimed in the returns he reviewed in 1995 was based upon his mistaken belief that Hollingsworth purchased Long Health's capital stock in 1993. We have determined that Hollingsworth was not the dealer who paid the taxes under T.C.A. 67-6-507(e) and was not entitled to the credits claimed. Hollingsworth apparently contends that as a result of the auditor's erroneous conclusion that the deductions claimed should be allowed the Department is forever estopped from denying the bad debt credits. However, it is well settled in this state that "the doctrine of estoppel does not operate against the State with respect to the collection of its revenue." *Memphis Shoppers News, inc. v. Woods*, 584 S.W.2d 196

(Tenn.1979). Hollingsworth's argument that Long Health retains entitlement to the bad debt credits in consequence if the auditor's mistake is without merit.

We affirm the judgment of the Trial Court in its award of $7,932.00 representing monies the Department concedes Hollingsworth is due as the result of an auditing error discovered during the pendency of trial. We otherwise reverse and dismiss the judgment of the Trial Court and remand the case for collection of the judgment and costs below. Costs of appeal are adjudged against Hollingsworth, Inc. aka Long Health Enterprises, Inc.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE